IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| **ROCKINGHAM PRECAST, INC.,** | ) |
| | ) |
|     Plaintiff, | ) Civil Action No. 5:11cv00024 |
| | ) |
| v. | ) |
| | ) By:  Michael F. Urbanski |
| **AMERICAN INFRASTRUCTURE-** | )      United States District Judge |
| **MARYLAND, INC.,** | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Rockingham Precast, Inc. ("Rockingham") filed this breach of contract action against defendant American Infrastructure-Maryland, Inc. ("AI") in the United States District Court for the Western District of Virginia, Harrisonburg Division.  The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, and there is no dispute that venue is proper.  However, AI has filed a Motion to Transfer Venue (Docket #6) pursuant to 28 U.S.C. § 1404(a), arguing the United States District Court for the District of Maryland, Baltimore Division, is a more convenient forum.  A hearing on this motion was held on July 19, 2011.  Because AI has not met its burden of proving transfer is appropriate in this case, defendant's motion is **DENIED**.

**I.**

Rockingham is a Virginia corporation with its principal place of business in Harrisonburg, Virginia.  It is engaged in the business of manufacturing precast concrete products for the construction industry.  AI is a Maryland corporation with its principal place of business in Fallston, Maryland.  It is engaged in the business of heavy civil construction of sites, roads, bridges and highways.

The parties entered into a contract pursuant to which Rockingham agreed to manufacture and deliver, and AI agreed to purchase, six prestressed concrete box beams and eight prestressed concrete slab beams for AI's use at its Southampton Road Bridge project in Bel Air, Maryland. AI issued a purchase order for these materials at a price of $180,105.44. Rockingham accepted this purchase order on June 4, 2009. On July 17, 2009, Rockingham accepted a change order that eliminated the eight prestressed concrete slab beams, added shop drawings and reduced the contract price to $148,603.28.

Rockingham claims it delivered the shop drawings to AI and fabricated the six concrete box beams at its facilities in Harrisonburg, which it delivered to AI at the project site on November 23, 2009, along with an invoice. Per the contract, AI agreed to pay Rockingham within 45 days. Rockingham alleges that, despite repeated demands for payment, AI has refused to pay the $142,603.28[1] it owes for the six prestressed box beams and shop drawings and is in material breach of the contract. For its part, AI claims that the materials supplied by Rockingham were defective and caused the bridge to experience structural failure. AI alleges it has suffered damages in excess of $500,000 as a result of Rockingham's breach of the contract. Although AI asserts that Rockingham's claim is subject to one or more counterclaims, no counterclaims have been filed in this case.

AI has filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a), claiming the district court in Maryland is a more convenient forum, as a substantial part of the events or omissions giving rise to Rockingham's claim occurred in Maryland. Specifically, AI argues that it does business almost exclusively in Maryland. Although it solicits bids in the Commonwealth of Virginia, these bids make up less than five percent of the overall solicitations as to all projects.

---

[1] While the change order reduced the contract price to $148,603.28, plaintiff's complaint alleges that $142,603.28 is the amount still owed.

It claims that no AI employees stepped foot in Virginia in connection with this project. The Southampton Road Bridge project, the materials for which are the subject of this suit, is located in Maryland, AI ordered the materials in Maryland, and Rockingham shipped the materials to Maryland. AI also claims it was the last party to sign the contract and that the required performance under the contract was delivery of the materials to the jobsite in Maryland. It asserts certain non-party fact and expert witnesses performed their investigations and inspections of the bridge and materials in Maryland, and the allegedly defective materials are still in Maryland, because it is too costly for AI to move them.

Rockingham objects to any transfer of venue, arguing AI's business dealings and contacts with Rockingham in the Commonwealth of Virginia are far more than what AI describes. Rockingham claims AI had numerous contacts within the Commonwealth in connection with this business transaction, in which AI agreed to purchase concrete materials from a Virginia corporation with its principal place of business in Harrisonburg, Virginia. The crux of this dispute, according to Rockingham, is AI's failure to pay for the materials that Rockingham supplied – materials that were fabricated in Virginia. And any alleged defects giving rise to a counterclaim by AI would have resulted from the fabrication process that took place in Virginia. As such, Rockingham argues, the district court in Maryland is not a more convenient forum.

This issue has been briefed and argued[2] and is now ripe for decision.

**II.**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Transfer under § 1404(a) is within the discretion of the court

---

[2] At the July 19, 2011 hearing, the court granted AI's Motion for Leave to Supplement Motion to Transfer Venue (Docket #19), allowing AI to file additional witness affidavits in support of its motion to transfer. The court also gave plaintiff ten days to file additional affidavits in support of its position.

3

following an "'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 62 (1964)). The principal factors to be considered include: (1) the plaintiff's choice of venue; (2) witness convenience and access; (3) the convenience of the parties; and (4) the interest of justice.[3] Shire LLC v. Mickle, No. 7:10cv00434, 2011 WL 607716, at *4 (W.D. Va. Feb. 11, 2011) (quoting Precision Franchising, LLC v. Coombs, No. 1:06cv1148, 2006 WL 3840334, at *2 (E.D. Va. Dec. 27, 2006)); accord AAI Corp. v. Applied Geo Tech., Inc., No. JKB-11-608, 2011 WL 3678903, at *3 (D. Md. Aug. 22, 2011);[4] see also Alltech, Inc. v. Myriad Develop., Inc., No. 5:08cv45, 2008 WL 5119670, at *4 (W.D. Va. Dec. 5, 2008) (noting a variety of factors guide a court's decision in whether to transfer a case pursuant to § 1404(a) but limiting its analysis to the statutory factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice).

The movant bears the burden of showing transfer is proper, and "'plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of [the] defendant.'" Gen. Creation LLC v. Leapfrog Enter., Inc., 192 F. Supp. 2d 503, 504-05 (W.D. Va. 2002) (alteration in original) (citing Cognitronics Imaging Sys., Inc. v. Recognition Research, Inc., 83 F. Supp. 2d 689, 696 (E.D. Va. 2000) and quoting Cambata Aviation, Inc. v. Kansas City Aviation Ctr., Inc., No. 5:01CV00062, 2011 WL 1274426, at *4 (W.D. Va. Oct. 22, 2001)); see also Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007) ("A defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the

---

[3] Additionally, the presence of a forum selection clause "'will be a significant factor that figures centrally in the district court's calculus.'" Shire v. Mickle, No. 7:10cv00434, 2011 WL 607716, at *4 (W.D. Va. Feb. 11, 2011) (quoting Stewart Org., 487 U.S. at 29). There is no forum selection clause in the parties' contract here.

[4] As the court in AAI Corp. aptly noted, some courts formulate the analysis differently, see, e.g., Beacon Wireless Solutions, Inc. v. Garmin Int'l, Inc., No. 5:11cv25, 2011 WL 4737404, at *4 (W.D. Va. Oct. 5, 2011) (listing eight factors), but "the content of the various formulations is the same." 2011 WL 3678903, at *3 n.1.

4

plaintiff's chosen forum."). "Indeed, the moving party must show that the balance of convenience among the parties and witnesses 'is beyond dead center, and strongly favors the transfer sought.'" Mullins v. Equifax Info. Servs., LLC, No. 3:05CV888, 2006 WL 1214024, at *5 (E.D. Va. Apr. 28, 2006) (quoting Medicenters of Am., Inc. v. T&V Realty Equip. Corp., 371 F. Supp. 1180, 1184 (E.D. Va. 1974)).  A district court has wide discretion in determining whether to transfer a proceeding's venue. Greenberry's Franchising Corp. v. Park, No. 3:10cv45, 2010 WL 5141285, at *3 (W.D. Va. Dec. 10, 2010).

### III.

As a threshold matter, the court must determine whether this case could have been brought in the proposed alternate forum, the District of Maryland. See Microaire Surgical Instruments, LLC v. Arthrex, Inc., No. 3:09cv00078, 2010 WL 2757351, at *3 (W.D. Va. July 13, 2010). Because AI is a Maryland corporation doing business in the state of Maryland, the District of Maryland would be an appropriate venue pursuant to 28 U.S.C. § 1391(a). Next, the court looks to the four factors to be considered in determining whether transfer is appropriate. See Shire LLC, 2011 WL 607716, at *4. Having carefully considered these factors, the court is not convinced that the District of Maryland would be the more convenient forum in this case for the reasons outlined below.

### A. *Plaintiff's chosen forum.*

The weight to be given to a plaintiff's choice of forum depends on the connection between the forum and the cause of action. GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 1999). "[A] plaintiff's choice of its home forum is given more weight than its choice of a foreign forum." Id.; see also Arthrex, Inc., 2010 WL 2757351, at *5. Rockingham filed suit in the Western District of Virginia, its home forum, and as such, its choice

5

of venue is entitled to considerable deference.  Leapfrog Enter., 192 F. Supp. 2d at 505; see also Alpharma, Inc. v. Purdue Pharma L.P., 634 F. Supp. 2d 626, 633 (W.D. Va. July 9, 2009) (because plaintiff filed suit in its home district, defendant must show venue is overwhelmingly inconvenient in order to satisfy its burden that a transfer is proper (citing Leapfrog Enter., 192 F. Supp. 2d at 505)).  Thus, this first factor militates against transfer.

### B. *Witness convenience and access.*

The second factor, witness convenience and access, is the heart of AI's motion to transfer.  Indeed, "[t]he convenience of witnesses is of considerable importance in determining whether a transfer of venue is appropriate under Section 1404(a)."  Mullins, 2006 WL 1214024, at *7.  Generally, "a distinction is drawn between party and non-party witnesses."  Id.  "'[C]ourts have repeatedly emphasized that in considering whether to transfer a case under 28 U.S.C. § 1404(a), the inconvenience to party witnesses is not afforded the same weight as the inconvenience to non-party witnesses.'"  Beacon Wireless, 2011 WL 4737404, at *5.  While party witnesses are presumed to be more willing to testify in a different forum, there is no such presumption for non-party witnesses.  Mullins, 2006 WL 1214024, at *7.  "'The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience.'"  Id. (quoting Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 636 (E.D. Va. 2003)); accord AAI Corp., 2011 WL 3678903, at *4.

Here, AI asserts that a number of its non-party witnesses reside in Maryland and that litigating in Virginia will cause great inconvenience to these individuals.  AI has submitted

6

affidavits from three such witnesses:[5] Thomas Davies, Chief Construction Inspector for Harford County, Maryland; Mark McDowell, Construction Inspector II for Harford County, Maryland; and Nick Catanzaro, an engineer based in Harford County, Maryland who was hired by AI's insurer to inspect and test the beams after the bridge collapsed.  These individuals all state that they have relevant testimony to offer,[6] that they live over 180 miles from the Harrisonburg courthouse and that litigating this matter in the Western District of Virginia presents a major inconvenience for them, both from a financial perspective and because it would interfere with family and other commitments.  In addition to the burdens of travel, AI asserts that the geographical distance puts defendant at a disadvantage in this litigation, as these witnesses are beyond the subpoena power of the Harrisonburg court.  AI specifically claims it will be difficult to get the government employees to testify at trial absent a subpoena, and that justice requires live testimony from these individuals.

But merely asserting that a witness lives outside the subpoena power of the court is not enough to tip the scales in favor of transfer.  "[T]he moving party must demonstrate 'whether that witness is willing to travel to a foreign jurisdiction.'"  Mullins, 2006 WL 1214024, at *8 (quoting Thayer / Patricof Educ. Funding, LLC v. Pryor Res., Inc., 196 F. Supp. 2d 21, 33 (D.D.C. 2002)).  AI has made no such showing here.  The affidavits of Davies, McDowell and Catanzano do not in any way suggest that these witnesses would be unwilling to travel to Virginia to testify absent a subpoena.  See Arthrex, Inc., 2010 WL 2757351, at *7 ("Arthrex has not produced any evidence supporting the proposition that any of the aforementioned individuals

---

[5]  Additionally, AI submitted affidavits from Christopher McKew and Brad Buchler, both AI employees who say litigating in Maryland would be more convenient.  As noted supra, inconvenience to party witnesses is not afforded the same weight as inconvenience to non-party witnesses.

[6]  The court assumes for purpose of this analysis that individuals named as potential witnesses have relevant and material testimony, as represented by the parties.  The court does not have enough information at this point to determine whether any of these witnesses' testimonies would be cumulative or immaterial or otherwise inadmissible.

would only be willing to testify, or be deposed, pursuant to the Court's compulsory process."). The affiants assert that traveling to Virginia for litigation would be less convenient than traveling to Maryland but do not indicate they would be unwilling to come to court in Harrisonburg.[7] Without evidence that these witnesses are unwilling to testify voluntarily, this factor becomes less important. Mullins, 2006 WL 1214024, at *8; see Titan Atlas Mfg, Inc. v. Sisk, No. 1:11cv00012, 2011 WL 3665122, at *17 (W.D. Va. Aug. 22, 2011) (finding factor did not weigh in defendants' favor where defendants failed to proffer to the court that any witnesses would be unwilling to testify voluntarily), adopted by 2011 WL 4043428 (W.D. Va. Sept. 9, 2011); see also AAI Corp., 2011 WL 3678903, at *4 (finding defendant failed to demonstrate any significant inconvenience to its witnesses that would diminish the weight accorded to plaintiff's chosen venue).

Additionally, to the extent that any of the defendant's non-party witnesses are unwilling to testify voluntarily, AI has not explained why live testimony is essential in this case and why de bene esse depositions of these witnesses would be inadequate. See Acterna, LLC v. Adtech, Inc., 129 F. Supp. 2d 936, 939 (E.D. Va. 2001) ("Most civil trials feature some deposition testimony and this suit is not extraordinary in this regard."). As the Eastern District of Virginia has noted:

> Although live testimony is the preferred mode of presenting evidence, when non-party witnesses are unavailable to give live testimony, videotaped depositions often are sufficient. Somewhat less weight is given to witness inconvenience when a party is unable to demonstrate with any particularity that videotaped

---

[7] In his affidavit, AI employee Christopher D. McKew identifies Chris Gale, Assistant Division Chief of Concrete Technology Field Operations for the Maryland State Highway Administration ("MSHA"), as a non-party witness with knowledge relevant to the instant lawsuit. McKew Aff., Docket #19-3, at ¶ 6d. AI has not submitted an affidavit from Gale. However, to the extent AI argues here that it will be difficult to get MSHA officials to testify in Harrisonburg absent a subpoena, its argument is undermined by the fact that MSHA inspectors traveled to Harrisonburg to observe and inspect the fabrication process. Budd Aff., Docket # 11-3, at ¶ 17; Supp. Budd Aff., Docket # 28, at ¶ 5.

> deposition testimony will be inadequate, and that live testimony is critical.

Samsung Elec. Co., Ltd. v. Rambus, Inc., 386 F. Supp. 2d 708, 718 (E.D. Va. 2005); see also Simms v. Thomson Reuters Tax & Accounting, Inc., No. 10-904-LPS, 2011 WL 4501225, at *5 (D. Del. Sept. 28, 2011) ("While deposition testimony is not a complete substitute for live trial testimony, it is a fallback that in almost all instances will prevent a miscarriage of justice.").

Certainly, litigating in Virginia increases the cost and expense of securing witness testimony for AI. But transferring the case to Maryland merely would shift those cost burdens to Rockingham. See AAI Corp., 2011 WL 3678903, at *4 (noting transfers of venue are not available to shift inconvenience from one side to the other). Rockingham proffers affidavits from three former employees – Wade Robinson, Firas Nyaz, and Cesar Cardoso-Escutia – and one MSHA inspector, Joel Chapman. It asserts these non-party witnesses all have relevant testimony. Like AI's witnesses, these individuals claim they would be inconvenienced if the litigation were transferred to Maryland, but none indicate they would be unwilling to testify voluntarily.

AI has not met its burden of demonstrating that its non-party witnesses will be unwilling to travel to Virginia to testify without a subpoena. AI also has failed to demonstrate with particularity why live testimony is essential to its defense of this case. Transferring this matter to Maryland would serve only to shift the cost burden of securing witness testimony to Rockingham. Therefore, the second factor does not weigh strongly in defendant's favor.

### C. *Convenience to parties.*

AI asserts it is a Maryland corporation doing business almost exclusively in the state of Maryland. It further claims that its business in the Commonwealth of Virginia is limited to the solicitation of bids, which comprises less than five percent of its overall solicitations for all its

9

projects. AI's principal office is located in Fallston, Maryland, which it claims is 186 miles away from the Harrisonburg courthouse. By way of contrast, AI represents that the courthouse in Baltimore is only 26 miles away. AI argues it would be unduly burdensome for its officers and employees to travel to Virginia to litigate this suit under these circumstances.

There is no question that it would be more convenient for AI to defend this suit in Maryland.[8] But, again, transferring this case to Maryland would only shift the inconvenience to Rockingham, which filed suit in its home forum. "[T]ransfers of venue are not available merely to shift inconvenience from one side to another." AAI Corp., 2011 WL 3678903, at *4 (citing Penn-Plax, Inc. v. L. Schultz, Inc., 988 F. Supp. 2d 906, 912 (D. Md. 1997)).

AI has not demonstrated that it will be difficult to transport documentary evidence to Virginia. See Titan Atlas, 2011 WL 3665122, at *16 (noting that "in modern litigation, documentary evidence is readily reproduced and transported from one district to another" and finding defendants failed to demonstrate that their documentary evidence would be so voluminous as to create a great burden on them). While AI argues that the concrete beams at issue are still located in Maryland, there is no indication that this physical evidence would need to be transported to Virginia or that justice would require the jury perform a site visit. See Thomas v. Home Depot, U.S.A., Inc., 131 F. Supp. 2d 934, 940 (E.D. Mich. 2001) ("Absent a showing by the movant that a view of the locality would be useful, the Court will not weigh the possibility of a jury's view of the scene."). Although the court is certain that some relevant evidence may be found in Maryland, it does not appear by any means that the only relevant evidence in this case is located in Maryland. Given the nature of AI's defense, that the beams fabricated by Rockingham were defective, it is very likely that material evidence also is located

---

[8] The court notes, however, that the distance between the district court in Harrisonburg and the district court in Baltimore is a mere 168 miles, just a few hours of driving time.

in Virginia. Finally, neither party has offered evidence to suggest that one is in a financially weaker position than the other, which might shift the convenience of the parties factor. Therefore, this third factor is neutral.

### D. *Interest of justice.*

Section 1404(a) requires the court to consider the interest of justice in determining whether to transfer a case to another district. This fourth factor "'encompasses public interest factors aimed at 'systematic integrity and fairness,'' which includes promoting judicial economy and avoiding inconsistent judgments." Alltech, Inc. v. Myriad Develop., Inc., No. 5:08cv45, 2008 WL 5119670, at *4 (W.D. Va. Dec. 5, 2008) (quoting Samsung Elec. Co., Ltd. v. Rambus, Inc., 386 F. Supp. 2d 708, 721 (E.D. Va. 2005) (citing Stewart Org., Inc. v. Ricoh, 487 U.S. 22, 30 (1988))); accord Mullins, 2006 WL 1214024, at *8. Other considerations are the court's familiarity with the applicable law, docket conditions, access to important premises, the possibility of unfair trial, the ability to join other parties, the potential for harassment, interest in having local controversies decided at home, and unfairness in burdening forum citizens with jury duty.[9] Alltech, 2008 WL 5119670, at *5 n.4; Mullins, 2006 WL 1214024, at *8.

Having weighed these considerations, the court does not find that this factor tips in favor of transfer. There does not appear to be another action involving these parties pending in Maryland. Cf. Alltech, 2008 WL 5119670, at *4 (where the court determined that the interest of justice weighed in favor of transfer because a related action was pending in the alternate forum and the two matters were intertwined). As such, there is no concern about potential inconsistent judgments. Mullins, 2006 WL 1214024, at *9 (finding no issue of inconsistent judgments when no other actions were pending between the parties). Nor is there any indication that either this

---

[9] "Systematic integrity must also necessarily take account of a party's attempt to game the federal courts through forum manipulation." Mullins, 2006 WL 1214024, at *8. There is no suggestion of forum manipulation here.

court or the district court in Maryland has invested substantial time and energy in a case involving similar facts and similar issues, so as to raise concerns of judicial economy. See Samsung Elec. Co., 386 F. Supp. 2d at 722. Neither party has raised an issue with respect to docket conditions. The court is not aware of any docket conditions in either forum that would bear on this analysis. Nor is there any issue regarding the ability to join other parties, the potential for harassment, or the possibility of an unfair trial. As previously noted, access to the premises is not at issue, as a site visit does not appear to be warranted in this case.

     AI argues that this matter should be litigated in Maryland because the nexus of this controversy to Maryland is greater than the nexus to Virginia. Specifically, defendant claims that a substantial part of the events giving rise to this cause of action occurred in Maryland: the concrete beams were for use in a bridge project located in Maryland; plaintiff provided and shipped concrete beams to the Maryland jobsite pursuant to the contract; the bridge collapsed in Maryland; and subsequent investigations of the concrete materials were performed in Maryland. Plaintiff, on the other hand, argues that all of these events give rise to AI's yet-to-be-filed counterclaim, not to the action currently pending in this court, which involves AI's failure to pay for the materials it ordered. Therefore, Rockingham asserts, the nexus to Maryland is not as great as AI argues.

     The court finds that the events giving rise to this cause of action occurred in both Virginia and Maryland. AI solicited a bid from and then entered into a business transaction with a Virginia corporation for the purchase of concrete beams. These beams were used in the Southampton Road Bridge project in Bel Air, Maryland. The bridge collapsed in Maryland. Even though AI has not filed a counterclaim against Rockingham related to the collapse of the bridge, its defense to Rockingham's allegation of non-payment in the instant case is that the

materials Rockingham supplied were defective. Those materials were fabricated in Virginia. The events upon which this action is founded occurred in both Virginia and Maryland.[10] On balance, the court finds this consideration to be neutral.

The consideration of having local controversies decided in the home forum does not weigh in favor of transfer. It cannot be said that the citizens of the Western District of Virginia have no relation to this litigation. This dispute involves Rockingham, a Virginia corporation with its principal place of business in Harrisonburg. This is not a case in which the citizens of the Western District of Virginia would be burdened with a controversy that bears no relation to the district.

Finally, the question of what state substantive law should be applied in this diversity case[11] does not tip the scales in favor of transfer. Federal courts sitting in diversity must apply the substantive law of the forum state, including its choice of law provisions. Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 418-19 (4th Cir. 2004) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938) and Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)). In Virginia, the place of performance governs questions of breach of contract. Equitable Trust Co. v. Bratwursthaus Mgmt. Corp., 514 F.2d 565, 567 (4th Cir. 1975). Questions of validity, interpretation or construction of a contract are resolved according to lex loci contractus, the law of the state where the contract was made. See Seabulk, 377 F.3d at 419 (citing Woodson v. Celina Mut. Ins. Co., 211 Va. 423, 177 S.E.2d 610, 613 (1970)); John Deere Constr. Equip. Co. v. Wright Equip. Co., Inc., 118 F. Supp. 2d 689, 692 (W.D. Va. 2002) (citing

---

[10] Even if the majority of events leading to this litigation were to have taken place in Maryland, that fact alone is not enough to warrant transfer. See Titan Atlas, 2011 WL 3665122, at *17 ("Another factor to be considered in the transferability analysis is whether the events upon which the action is founded occurred outside the forum. However, even if they did, this is not a sufficient reason in and of itself to justify a transfer.").

[11] The contract does not contain a choice of law provision.

13

Lexie v. State Farm Mut. Auto. Ins. Co., 251 Va. 390, 469 S.E.2d 61, 63 (1996) and C.I.T. Corp. v. Guy, 170 Va. 16, 195 S.E. 659, 661 (1938)). However, where "a contract is made in one jurisdiction but performed in another, the law of the place of performance governs the contract." Hunter Innovations, Inc. v. Travelers Indem. Co., 753 F. Supp. 2d 597, 603 (E.D. Va. 2010) (citing Erie Ins. Exch. v. Shapiro, 248 Va. 638, 450 S.E.2d 144 (1994)).

AI argues that Maryland law applies to this dispute, because Maryland is both the place of performance of the contract and the state where the contract was made. Specifically, AI claims that it was the last party to sign the contract and that the required performance under the contract was delivery of the materials to the jobsite in Maryland. Rockingham, on the other hand, argues that Virginia law applies because Rockingham's Executive Vice President signed and accepted the purchase order issued by AI creating a valid contract in Virginia. Rockingham claims that delivery of the goods is only one aspect of performance under the contract; the other is payment, on which the breach alleged in plaintiff's complaint centers. Because payment was required to be made at Rockingham's place of business pursuant to Virginia law, Rockingham claims Virginia law applies.

At this juncture, the court need not resolve the issue of which law governs this breach of contract action. It is not determinative of the issue currently before the court and such a ruling would be premature. Even if Maryland law applies, there is no reason this federal court sitting in diversity cannot apply the law of Maryland in this case. See Beacon Wireless, 2011 WL 4737404, at * 6 (stating the court "harbors no reservations" with respect to its ability to adjudicate Kansas law claims, especially when claims stem from settled, widely applicable legal principles such as breach of contract); AAI Corp., 2011 WL 3678903, at *5 (fact that Mississippi law may apply is not a sufficient reason by itself to warrant a transfer of venue); Reynolds Foil,

Inc. v. Pai, No. 3:09cv657, 2010 WL 1225620, at *9 (E.D. Va. Mar. 25, 2010) ("[T]o the extent that the law of New Jersey may be applied, federal courts are regularly called upon to apply the law of other states."); LIOBMedia, LLC v. Dataflow / Alaska, Inc., No. 1:07cv355, 2007 WL 2109279, at *3 (E.D. Va. 2007) (holding "[t]he fact that Defendant alleges that Alaska law may apply is not enough to justify transfer of venue" and noting the court is well-suited to apply Alaska law if necessary); see also Arthrex, Inc., 2010 WL 2757351, at *10 (faced with the possibility of applying German law, the court noted application of foreign law is a task federal courts are competent to perform).

For these reasons, the interest of justice factor does not weigh in favor of transfer.

**IV.**

Defendant has not met its burden of proving transfer is proper in this case.  Plaintiff's choice of forum is entitled to substantial weight, and AI has not demonstrated that the other three factors – convenience of the witnesses, convenience of the parties, and the interest of justice – tip the scales decidedly in defendant's favor.  As such, plaintiff's choice of forum should prevail and Defendant's Motion to Transfer Venue (Docket #6) is **DENIED**.  An appropriate Order will be entered.

The parties are **DIRECTED** to contact judicial assistant Sue DePuy (540/857-5124) within **ten (10) days** of entry of this opinion and the accompanying Order to schedule a trial date.

           Entered:  November 14, 2011

           */s/ Michael F. Urbanski*
           Michael F. Urbanski
           United States District Judge