IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
**Harrisonburg Division**

| | | |
|---|---|---|
| ROCKINGHAM PRECAST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 5:11-CV-00024 |
| | ) | Assigned to Judge Michael F. Urbanski |
| | ) | |
| AMERICAN INFRASTRUCTURE- | ) | |
| MARYLAND, INC., *et. al.*, | ) | |
| | ) | |
| Defendants/ | ) | |
| Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROCKINGHAM PRECAST, INC. | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**COUNTER-DEFENDANT ROCKINGHAM PRECAST, INC.'S
MOTION *IN LIMINE* REGARDING DAMAGES**

Counter-Defendant Rockingham Precast, Inc. ("Rockingham"), by counsel, respectfully moves this Court for entry of an Order *in limine* precluding and excluding evidence of attorneys' fees and limit damages to those allowed by the contract and warranty, if proved.

In further support of this Motion, Rockingham respectfully refers the Court to the attached Memorandum of Points and Authorities, and Proposed Order.

Respectfully submitted,

/s/ Edward J. Longosz, II
Edward J. Longosz, II (#39411)
Gabriella V. Cellarosi (#76369)
Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Ave., N.W., Suite 1200
Washington, DC 20006
Direct: (202) 659-6619
Main: (202) 659-6600
Fax: (202) 659-6699
e-mail: elongosz@eckertseamans.com
Counter-Defendant Rockingham Precast, Inc.

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of July 2012, a copy of the foregoing **Counter-Defendant Rockingham Precast, Inc.'s Motion *In Limine* Regarding Damages** was served electronically, as follows:

        Curtis C. Coon, Esquire
        Coon & Cole, LLC
        401 Washington Avenue, Suite 501
        Towson, MD 21204

        Brad C. Friend, Esquire
        Kraftson Caudle
        1600 Tysons Boulevard, Suite 250
        McLean, VA 22102

        Edward Abbott Jaeger, Jr., Esquire
        White and Williams, LLP
        One Liberty Place, Suite 1800
        1650 Market Street
        Philadelphia, PA 19103

        Stephen Joseph Annino, Esquire
        Kasimer & Annino, P.C.
        Tysons Office Park
        7653 Leesburg Pike
        Falls Church, VA 22043

        /s/ Edward J. Longosz, II
        Edward J. Longosz, II

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
**Harrisonburg Division**

| | | |
|---|---|---|
| ROCKINGHAM PRECAST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 5:11-CV-00024 |
| | ) | Assigned to Judge Michael F. Urbanski |
| | ) | |
| AMERICAN INFRASTRUCTURE-MARYLAND, INC., *et. al.*, | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROCKINGHAM PRECAST, INC. | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**COUNTER-DEFENDANT ROCKINGHAM PRECAST, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
<u>MOTION *IN LIMINE* ON DAMAGES</u>**

Counter-Defendant Rockingham Precast, Inc. ("Rockingham"), by counsel, respectfully submits this Memorandum of Law in support of its Motion *In Limine* directed to American Infrastructure's ("AI") claim for damages, and in support thereof states as follows:

**<u>INTRODUCTION</u>**

1. This is a two part case. Rockingham filed its initial Complaint seeking damages for breach of contract for unpaid invoices due it from AI. Under the contract at issue, Rockingham agreed to manufacture and sell and AI agreed to purchase six pre-stressed concrete box beams. Rockingham also agreed to deliver the beams to the Southampton Road Bridge Project located in Harford County, Bel Air, Maryland. The general contractor for the bridge

project was AI and Rockingham was the subcontractor to AI. All engineering drawings for the project were supplied by AI and the County. Rockingham only supplied the beams. Rockingham's services were complete upon delivery of the beams to the county project site.

2. The beams were delivered to the site on November 24 and 25, 2009 and erected and put in place by AI.

3. On January 14, 2010, AI decided to pour the concrete deck road surface. Immediately following the pour, one of the beams (#3) collapsed which compromised the road to the bridge. AI alleges that the beam failure was due to defects in the manufacture and fabrication of the beams attributable to Rockingham. Rockingham contends that there were multiple causes for the failure, including *inter alia*, improper installation by AI; damage during placement caused by AI; and/or damage during transport; and the pouring of improper amounts of concrete over the beams by AI. Rockingham was not present during the off loading, erection and installation process of the beams on site. Rockingham did not provide advisory services to AI prior to or during the off loading, erection and installation process.

4. Following delivery of the beams on November 24 and 25, 2009, Rockingham invoiced AI for payment of the beams. The total invoice to be paid was $148,603.28. The invoice was to be paid within 45 days. AI ignored the invoice, and decided it was not going to pay the invoice because of the beam collapse on January 14, 2010, notwithstanding the fact AI was paid by the County for the beams in the amount of $198,000 in December 2009. (See Exhibit A, Davies Dep. Tr. at pp. 102-103; Exhibit B, Harford County Cost Analysis Report). AI withheld payment despite the contract being performed, the beams delivered, and there being no set off provision in the Contract, and the County paying AI $198,000 (which was $50,000 more than its contract with Rockingham).

5. AI also made an insurance claim to its insurer Great American for damages to the bridge. In connection with the claim, Great American hired AI to perform the repairs and replacement of the bridge after the beam failure and paid AI for 5 new beams ($114,000) (apparently under the invoice, AI was not reimbursed for the actual failed beam (#3) or any work attendant to the failed beam). AI continued to keep the $198,000 and accepted the double payment of $114,000. In connection with the recent resolution of the subrogation claim between Great American and Rockingham, AI was called upon to repay the $114,000 double recovery; which it apparently has agreed to do so.

6. AI, in response to Rockingham's claim, filed a counterclaim seeking damages and attorneys' fees for amounts not recovered from or paid by Great American, despite the fact that it agreed to be Great American's vendor for the repairs. AI also claims attorneys' fees in connection with the counterclaim. It should be noted that AI was never sued, nor was it called upon to defend or indemnify the County for a third party claim and did not expend attorneys' fees in doing so.

7. This motion *in limine* requests that the Court: (i) exclude AI's presentation of evidence and testimony pertaining to an attorneys' fee claim; and (ii) exclude AI's presentation of evidence and testimony regarding non-recoverable damages to the extent that it is able to prove a case of liability.

## ARGUMENT

I. **American Infrastructure's claim for attorneys' fees should be excluded and American Infrastructure should be barred from <u>presenting testimony or evidence relating to its attorneys' fees at trial.</u>**

8. "The general rule in Virginia is that in the absence of any contractual or statutory provision to the contrary, each party must bear its own attorney's fees." *Banker Steel Co., LLC*

*v. Hercules Bolt, Co.,* 2011 U.S. Dist. LEXIS 49761, at * 53 (W.D. Va. May 6, 2011); *see also, Gilmore v. Basic Industries, Inc.,* 233 Va. 485, 490 (1987) (holding that in the absence of a statutory or contractual provision to the contrary, attorneys' fees are not recoverable by the prevailing litigant). The narrow exception to this rule is found in *Hiss,* where the Supreme Court of Virginia held that the prevailing party in an initial breach of contract action could obtain reimbursement for attorneys' fees from a third party whose breach of an attorney-client employment contract necessitated the institution of the initial action. *Hiss v. Friedburg,* 201 Va. 572 (1960).

9. In this case, the six box beams were supplied by Rockingham to AI pursuant to a purchase order prepared and provided by AI.[1] It should be noted that while the original purchase order provided for recovery of attorneys' fees subject to certain conditions in Sections 7 and 13 of the purchase order and terms and conditions; Section 7 relating to the recovery of attorneys' fees in the event of a default was stricken by Rockingham upon execution and return of the purchase order to AI. (Exhibit C, original purchase order; Exhibit D, executed purchase order). AI did not verbally nor in writing dispute the striking of the provision. Therefore, this section is not at issue, nor part of the contention for recovery of attorneys' fees.

10. In its Counterclaim, AI has alleged that it is entitled to recover attorneys' fees incurred in this litigation pursuant to the indemnity provision. (Counterclaim, ¶ 18.) However, the contractual indemnity provision does not provide any indemnity to AI for its own negligence or actions. Moreover, AI has not cited any other basis in support of its claim for attorneys' fees.

---

[1] Pursuant to Virginia law, "[i]n the event of ambiguity in the written contract, such ambiguity must be construed against the drafter of the agreement." *Va. Power Energy Mktg. v. EQT Energy, LLC,* 2012 U.S. Dist. LEXIS 98553 at * 15, fn. 7 (E.D. Va. July 15, 2012) (quoting *Martin & Martin, Inc. v. Bradley Enters. Inc.,* 256 Va. 288, 291 (1998).

4

As such, AI's claim for attorneys' fees is solely based upon the indemnity provision in the purchase order. In pertinent part, the indemnity provision in the parties' agreement provides:

> Seller shall indemnify and hold harmless Purchaser, its affiliated companies, and all of their officers, agents and employees, from any claim, loss, damage, liability or expense, including attorneys' fees, on account of damage to property, injuries (including death) to any person, including Purchaser's employees; environmental damage; alleged or actual infringement of any patent rights by reason of the sale or use of any materials, equipment, device, design or apparatus furnished by Seller; and any economic losses, fine or penalties, arising or in any manner growing out of in whole or in part the performance of any work or the supply of any materials hereunder, whether discovered before or after completion of the work. **Seller's indemnification and hold harmless shall apply whether or not the claimed damages or loss results *in whole* or in part from any act or omission of any party indemnified hereunder**. This indemnification obligation is not limited to any way by a limitation on the amount or type of damages, compensation or benefits payable by or for the Purchaser or Seller under workman's compensation acts, disability benefits acts or other employee benefits acts.

(Exhibit D) (emphasis added).

11. As the emphasized language clearly illustrates, this indemnity provision is void as a matter of public policy because it requires Rockingham to indemnify AI even in situations where AI is solely negligent.

12. The Commonwealth of Virginia has voided such indemnity provisions by statute. Va. Code § 11-4.1 provides:

> Any provision contained in any contract relating to the construction, alteration, repair or maintenance of a building, structure or appurtenance thereto, including moving, demolition and excavation connected therewith, or any provision contained in any contract relating to the construction of projects other than buildings by which the contractor performing such work purports to indemnify or hold harmless another party to the contract against liability for damage arising out of bodily injury to persons or damage to property suffered in the course of performance of the contract, **caused by or resulting *solely* from the negligence of such other party or his agents or employees, is against public policy and is void and unenforceable**. This section applies to such contracts between contractors and any public body, as defined in § 2.2-4301.

5

(emphasis added). *See, also, Uniwest Const., Inc. v. Amtech Elevator Servs.*, 280 Va. 428, 442 (2010), *op. withdrawn, in part, remanded*, 281 Va. 509 (2011) (holding that the public policy expressed in Va. Code. Ann. § 11-4.1, which voids any contractual provision which purports to indemnify or hold harmless another party to the contract against liability for damage caused by or resulting solely from the negligence of the other party to the contract).

13. Likewise, Maryland courts take a consistent position, voiding recovery of attorneys' fees pursuant to an indemnification provision providing indemnification for a party's own negligence. MD Code, Courts and Judicial Proceedings, § 5-401(a)(1) provides:

> A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relating to architectural, engineering, inspecting, or surveying services, or the construction, alteration, repair, or maintenance of a building, structure, appurtenance or appliance, including moving, demolition, and excavating connected with those services or that work, purporting to indemnify the promisee against liability for damages arising out of bodily injury to any person or damage to property **caused by or resulting from the *sole* negligence of the promisee or indemnitee, or the agents or employees of the promisee or indemnitee, is against public policy and is void and unenforceable.**

(emphasis added).

14. Accordingly, AI's claim for attorneys' fees – which is solely based upon the purchase order's indemnity provision – should be precluded and AI should be barred from presenting any evidence relating to its attorneys' fees because the indemnity provision is void as a matter of public policy.

15. As further grounds, the indemnity provision relates to being indemnified for claims and third party claims. No such claims have been brought in this case against AI for which they are seeking attorneys fee recovery. There has been no tender of defense or indemnity pled or alleged by AI. Rather, AI attempts to ignore the well settled rule that attorneys' fees are not recoverable in this commercial dispute absent a contractual or statutory provision. No such

provision exists. Therefore, the Court should preclude and exclude such evidence and request for damages.

## II. American Infrastructure should be barred from presenting evidence and testimony on non-recoverable damages.

16. Under Virginia law, whether damages are direct or consequential is a matter of law for decision by the court. *Banker Steel Co.*, 2011 U.S. Dist. LEXIS 49761, at * 20. Direct damages are those that arise naturally and ordinarily from a breach of contract and can be expected to result from a breach. *Id.*, at * 20-21. Consequential damages arise from the intervention of special circumstances which are not predictable. *Id.* Direct damages are compensable, whereas consequential damages are compensable only if it is determined that the special circumstances were within the contemplation of both contracting parties. *Id.* **"In a breach of contract action, the plaintiff bears the burden to establish the element of damages with reasonable certainty."** *Id.*, at * 29 (quoting *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154 (2009) (emphasis added). Damages that are contingent, speculative, and uncertain cannot be established with reasonable certainty and thus, are not recoverable. *Id.* Additionally, a plaintiff must use a proper method and factual foundation for calculation damages, furnishing evidence sufficient for the trier of fact to make an intelligent and probable estimate of the damages sustained. *Id.*

17. Here, AI bears the burden to establish direct damages that are reasonably certain and are not speculative, and recoverable under the Contract. It appears that AI is seeking warranty damages, ostensibly for monies not paid by its insurer, Great American. To the extent that such damages are even proved and recoverable, they should be limited to the non-reimbursed cost associated with the individual beam that failed. In this regard, Exhibit E clearly

7

shows those damages which the insurer reduced (paid for 5 not 6 beams and took proportional adjustment) specific to the beam failure to include:

| | |
|---|---|
| --<$416.04> | Construction stake out for 1 Beam |
| --<$795.00> | Trailer/Office for 1 Beam |
| --<$22,886.83> | 1 Beam Purchase |
| --<$755.00> | OT for 1 Beam |
| --<$822.00> | Labor/Equipment for 1 Beam |
| --<$4,459.74> | Saw/cut 1 Beam |
| --<$827.66> | Debris Screens for 1 Beam |
| --<$21,777.39> | Move Beam to Pit/Storage for 1 Beam |
| --<$52,739.66> | |

AI can recover no more than those amounts in this litigation. That, of course, is offset by other recoveries by AI. In other words, assuming arguendo, if AI were to prove that Rockingham was the cause of the beam failure, then AI's damages would be limited to:

| | |
|---|---|
| County Payment | $198,000.00 |
| Less Payment by AI New Beams to Great American for double recovery | <$114,000.00> |
| | $84,000.00 (NET) |
| Less not reimbursed By insurance company For the one failed beam | <$52,739.66> |
| 18.2% Mark-up not reimbursed | <$9,598.61> |
| Deductible | $21,661.73<br><$25,000.00> |
| Total Permitted Recoverable loss in This lawsuit. | <$3,338.27> |

18. The warranty only extends to recovery for the failed product -- in this case the beam and its replacement. That is why Great American specifically did not pay for the failed beam and proportionately reduced damages and payment for the beam. AI can recover no more than that loss if it proves its case.

## **CONCLUSION**

In light of the foregoing reasons, Rockingham Precast respectfully requests that this Court grant its Motion *In Limine* and preclude and exclude evidence of attorneys' fees and limit damages to those allowed by the contract and warranty, if proved.

Respectfully submitted,

/s/ Edward J. Longosz, II
Edward J. Longosz, II (#39411)
Gabriella V. Cellarosi (#76369)
Eckert Seamans Cherin & Mellott, LLC
1717 Pennsylvania Ave., N.W., Suite 1200
Washington, DC 20006
Direct: (202) 659-6619
Main: (202) 659-6600
Fax: (202) 659-6699
e-mail: elongosz@eckertseamans.com
Counter-Defendant Rockingham Precast, Inc.

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of July 2012, a copy of the foregoing **Plaintiff/Counter-Defendant Rockingham Precast, Inc.'s Memorandum of Law in Support of Its Motion *in Limine* on Damages** was filed and served electronically, to the following:

>Curtis C. Coon, Esquire
>Coon & Cole, LLC
>401 Washington Avenue, Suite 501
>Towson, MD 21204
>
>Brad C. Friend, Esquire
>Kraftson Caudle
>1600 Tysons Boulevard, Suite 250
>McLean, VA 22102
>
>Edward Abbott Jaeger, Jr., Esquire
>White and Williams, LLP
>One Liberty Place, Suite 1800
>1650 Market Street
>Philadelphia, PA 19103
>
>Stephen Joseph Annino, Esquire
>Kasimer & Annino, P.C.
>Tysons Office Park
>7653 Leesburg Pike
>Falls Church, VA 22043

/s/ Edward J. Longosz, II
Edward J. Longosz, II